UNITED STATES of America and Rodney J. Kryztof, Revenue Agent, Internal Revenue Service, Petitioners,

v.

JEFF–LEWIS SAVINGS & LOAN ASSOCIATION, and Richard F. Bennett, Vice President, Respondents,

Robert L. Bennett, Intervenor.

UNITED STATES of America and Rodney J. Kryztof, Revenue Agent, Internal Revenue Service, Petitioners,

v.

SEAWAY NATIONAL BANK, and Richard E. Hayes, Vice President, Respondents,

Robert L. Bennett, Intervenor.

Misc. Nos. 522, 575.

United States District Court, N. D. New York.

Jan. 20, 1982.

George H. Lowe, U. S. Atty., Syracuse, N. Y., Gerald C. Miller, Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

Robert L. Bennett, intervenor, pro se.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief District Judge.

By Order dated October 7, 1981, this Court granted Mr. Bennett's request to intervene in these two IRS summons enforcement proceedings, and further recognized that Mr. Bennett's specific allegations of a bad faith investigation warranted the scheduling of a hearing to give the intervenor an opportunity to establish a proper claim under such a theory.

That hearing was held October 28 and 29, 1981, at which time Mr. Bennett was granted generous latitude in access to subpoenaed witnesses. Some procedural background is necessary to properly represent Mr. Bennett's position at the close of that hearing.

### I.

These two IRS summons were issued to two banking institutions in the Watertown, New York area. There were others issued to banks in the same county; one was previously enforced by Order of this Court, and is presently on appeal to the Second Circuit, while the remaining notices have not yet come before this Court. The summonses seek any and all information held by the banks that pertains to Robert L. Bennett, a Watertown resident.

As this Court has previously noted, Mr. Bennett is actively involved in a locally based tax protest group called the New York Patriots, furthermore he claims membership in at least one national organization advocating protest of income tax payment.

The record is also replete with references to other ongoing criminal investigations begun by the IRS. However, it is significant to note that no referral of the instant civil investigation of tax liabilities for the tax years 1977, 1978 and 1979 was ever made to the Criminal Investigation Division of the IRS for the purpose of pursuing criminal prosecution. In fact, Agent Kryztof testified that he had had no involvement with any governmental unit regarding criminal violations involving Mr. Bennett. That does not mean that Agent Kryztof was unaware of Mr. Bennett's tax protest involvement, for he did receive reports from the Criminal Investigation Division, Agent Sweeny, regarding Mr. Bennett. He insists, however, that those reports contained nothing in reference to Mr. Bennett's tax liability for the years in question.

However, Agent Kryztof was privy to at least one other source of information regarding Mr. Bennett. From 1976 through 1979, he had been enrolled in photography classes in Watertown, New York. His instructor was a man by the name of Peter Klop. Their friendly communications included discussions about both their vocations. One conversation in particular included the mention of Mr. Bennett. Agent Kryztof remembers it to have taken place in November of 1979. At that time, Mr. Klop asked Agent Kryztof what he would do if threatened during an audit by a taxpayer. Mr. Klop then identified Mr. Bennett as a potential "flagrant abuser of the law," and warned his friend Kryztof that Mr. Bennett could be dangerous because of his espoused views regarding the Internal Revenue Service.

The involvement of Mr. Klop was dramatically brought into focus in this case when a news reporter for the Watertown Daily Times wrote an article linking Peter Klop with a general civil IRS investigation of Mr. Bennett. The article described that two empty envelopes addressed to Agent Kryztof bearing the return address of the Criminal Investigation Division were found in the former offices of Peter Klop. Mr. Bennett had originally requested that Mr. Klop testify, but he did not pursue that request when he was advised that Mr. Klop was now in the Federal Witness protection program and could not be immediately produced by the government. Mr. Klop had been assigned to that program as a result of

information he had supplied to treasury agents investigating criminal firearms charges against Mr. Bennett.

Mr. Bennett did subpoena the author of the story, hoping she might describe a link between this civil investigation and any interest the IRS may have in pursuing a criminal prosecution based upon information she obtained in the acquisition of those empty envelopes. The newspaper's motion to quash on the grounds that the subpoena was violative of the statutory reporter's privilege, N.Y.Civ.R.Law § 79-h, spawned by the First Amendment, was ultimately granted by this Court following an in-camera review of the reporter's testimony. Additionally, Ms. Barnes, the article's author, did testify just before the close of the hearing that none of the testimony from those two days conflicted in any way with information she had received from her sources. It is clear from the substance of the article, that a connection between civil and criminal inquiries by the IRS rested completely upon the empty envelopes, linking Peter Klop (a known informant in the criminal investigation) with Agent Kryztof who is conducting the civil investigation of Mr. Bennett's tax liability for the years, 1977, 1978 and 1979.

However, none of the testimony substantiated any factual basis for the whereabouts or contents of those envelopes. Although the news reporter had drawn certain conclusions about Mr. Klop's purported dual function in the criminal and civil investigations, Mr. Bennett did not establish that in fact the IRS was in any way committed to obtaining information through Mr. Klop for the purpose of Agent Kryztof's civil inquiry.

Almost all of the testimony at the hearing was provided by Agent Kryztof and Special Agent Sweeny of the Criminal Investigation Division (CID). Their testimony consistently related that there was no correlation between Agent Kryztof's activities regarding Mr. Bennett's tax liability, and any intelligence activity carried on at the CID. Furthermore, Special Agent Sweeny testified that he was familiar with a criminal investigation regarding Mr. Ben-

nett, identified as an alleged violation of 26 U.S.C. § 7206(2) (aiding and assisting in the preparation of false tax returns).

Additionally, Agent Kryztof countered Mr. Bennett's accusations that the IRS had purposefully delayed investigation for over one year, by emphasizing that his recommendation had been made within the prescribed 25-day period.

Following an unsuccessful motion to quash the subpoena, IRS District Director Cappelli did testify that he had no knowledge of any shared purpose of investigation between the CID and Agent Kryztof's tax liability inquiry. He agreed that such direction would originate from his office, yet he maintained that no dual function was authorized by him. He did testify that he had authorized the criminal investigation of Mr. Bennett then being conducted by Special Agent Sweeny. He further testified that he was familiar with the IRS policy of utilizing civil investigations to garner information that might later contribute to criminal prosecution, but insisted that no such purpose provoked the present inquiry, although he stated that he had advised such a procedure on other occasions.

Mr. Cappelli further explained that all summons enforcement materials are referred to the U.S. Attorney's Office for formal proceedings, and that he was not aware of any deliberate delay on the part of the IRS in bringing that summons enforcement before this Court.

## II.

■ On the strength of this testimony, it is clear that Mr. Bennett has not carried his burden of proof under the prevailing theory of bad faith prosecution.

The Court notes at the outset that the IRS has observed the proper procedures for obtaining information relevant to Bennett's tax liability. They have asserted without contradiction that a valid civil purpose prompted the attempt to enforce these summonses, and furthermore that they did not purposefully delay the civil inquiry.

The Supreme Court in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964) succinctly outlined the elements of a good faith exercise on the part of the IRS:

[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed... [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

More recently, the Supreme Court has clarified the language of some earlier opinions, to take notice that civil and criminal investigations are often interrelated, and a bad faith inquiry must expose the complete abandonment of any civil purpose. *United States v. LaSalle National Bank*, 437 U.S. 298, 314–17, 98 S.Ct. 2357, 2366–67, 57 L.Ed.2d 221 (1978).

More particularly, the Second Circuit has viewed the taxpayer's burden under a more stringent standard. In *United States v. Chemical Bank*, 593 F.2d 451, 457 (2d Cir. 1979), the court noted that the involvement of IRS agents in Justice Department investigations does not *per se* alter their function, "because the agents are not in a position to gather information for another department of Government either at their will or under general directive." The IRS's own directives insure the maintenance of institutional autonomy, because of guidelines "that apply whenever the IRS participates in a joint investigation." Note, the Institutional Bad Faith Defense to the Enforcement of IRS Summonses, 80 Col.L.Rev. 621, 635 (1980), *citing*, 2 Internal Revenue Manual—Audit (CCH), pt. IV, §§ 4566.6, .7 (1979). It is clear that the IRS's own guidelines coupled with "the statutory restraints on information sharing, suggests that IRS cooperation with an interagency strike force should not automatically create a presumption that the IRS has assumed an improper information-gathering role." *Id.* at 636.

Indeed, the IRS remains under the control of their own superiors, even when the Justice Department prompts the inquiry, *United States v. Chemical Bank, supra*, at 456 (2d Cir. 1979).

Clearly the testimony by all the IRS personnel maintained the unwaivering position that the IRS was using powers Congressionally granted under § 7602 to ascertain Mr. Bennett's tax liability for the years 1977, 1978, and 1979.

■ This Court narrowly defined the parameters of a bad faith claim in the Memorandum-Decision and Order dated October 7, 1981. Mr. Bennett could have sustained his burden on either of two recognized bases, 1) where formal recommendation for criminal prosecution is delayed solely to gather additional evidence, or 2) where the IRS is using § 7602 summons power to gather evidence for the Department of Justice. *United States v. First National Bank of Atlanta*, 628 F.2d 871, 874 (5th Cir. 1980).

Of course this Court recognizes that the IRS is presently conducting a criminal investigation of Mr. Bennett, however under the rule of *LaSalle, supra*, the mere existence of that pending prosecution is not dispositive of bad faith on the part of the IRS. The subject bank information is intended to verify tax liability for the specified years, any other purpose the IRS may have in obtaining the information is irrelevant to this case. The Seventh Circuit has recently decided a case describing that the taxpayer "must 'prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties.'" *United States v. Kis, et al.*, 658 F.2d 526, 538 (7th Cir. 1981), *citing, United States v. Moll*, 602 F.2d 134, 138 (7th Cir. 1979). The opinion in *Kis* further describes that the "taxpayer must do more than just produce evidence that would call into question the government's prima facie case."

*Id.* at 538–9. It is obvious that the taxpayer's burden is a heavy one, and despite competent effort on Mr. Bennett's part, he was not able to demonstrate that the IRS had forsaken tax liability verification as the purpose of the summonses. Furthermore, this Court notes that the standard of proof required of the taxpayer in the Seventh Circuit is "by a preponderance of the evidence." *Id.* at 540. As this Court previously noted in the October, 1981 decision, and as emphasized in *Kis,* is that "the taxpayer bears an almost impossible burden" when an enforcement challenge is raised prior to Justice Department involvement. *Id.* at 541, *quoting, United States v. Garden State National Bank,* 607 F.2d 61, 66–67 (3d Cir. 1979).

The Second Circuit has not only characterized the taxpayer's burden as a "heavy one," but further has adopted the *LaSalle* requirement that the taxpayer must " 'disprove the actual existence of a valid civil tax determination or collection purpose by the Service...' ", *United States v. Chase Manhattan Bank,* 598 F.2d 321, 326 (2nd Cir. 1979), *citing LaSalle, supra,* at 316, 98 S.Ct. at 2367.

The Justice Department is not as yet involved in Agent Kryztof's inquiry, and the involvement of Special Agent Sweeny does not automatically render this inquiry violative of § 7602 summons power. *Kis, supra* at 541, *citing, Donaldson v. United States,* 400 U.S. 517, 535, 91 S.Ct. 534, 544, 27 L.Ed.2d 580 (1971). The court in *Kis* recognized that in many instances, a special agent and a revenue agent work together. *Id.* at 541, n. 44. Certainly that was the case here, as Special Agent Sweeny was assigned to be present at the appointed audit interview date between Mr. Bennett and Agent Kryztof. The purpose of his presence was for security reasons, considered necessary because of Mr. Bennett's reputation for tax protest in the community.

█ Moreover, this Court may not make an inquiry into Agent Kryztof's personal motives. *LaSalle, supra* at 311–12, 98 S.Ct. at 2364–65. Rather the courts must evaluate the "institutional purpose" *United States v. Chase Manhattan Bank,* 598 F.2d 321, 326 (2nd Cir. 1979).

Although Mr. Bennett emphasized that he believes his membership in the N.Y. Patriots instigated the investigation, this allegation does not persuade this Court that he was in any way singled out for unfair treatment. The IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Foxman v. Renison,* 625 F.2d 429, 431 (2d Cir. 1980), *quoting, United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 (1950).

With respect to Mr. Bennett's allegations of delay in enforcement, the facts are clear that no such delay was occasioned with deliberate purpose by either Agent Kryztof or the Service, for the testimony established that the IRS's own time deadlines were met with reference to these summonses. Furthermore, "it is not extraordinary for audit investigations to take a considerable amount of time," *United States v. Chemical Bank,* 593 F.2d 451, 458 n. 7 (2d Cir. 1979), *citing, Application of Magnus,* 299 F.2d 335, 337 (2d Cir.), *cert. denied,* 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962).

Finally, no request for further discovery has been made, and this Court agrees that none is necessary. There is no doubt upon the facts of this case, that the IRS maintains an interest in pursuing a civil tax liability inquiry for the years in question, and for this reason this Court must order enforcement of the summons at this time.

With respect to the government's motion for witness fees for District Director Cappelli, this Court notes that Mr. Bennett has neglected to request in forma pauperis status in this civil proceeding, and none has been accorded.

█ Despite Mr. Bennett's assertions that his civil status in this case should occasion no different standard of review by this Court, it is undisputed that civil and criminal cases do in fact warrant differing standards with reference to the individual's financial capabilities. 28 U.S.C. § 1915;

*Weller v. Dickson,* 314 F.2d 598 (10th Cir. 1963), *cert. denied,* 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 ("only in exceptional circumstances" in civil cases). Of course leave to proceed in forma pauperis is within the sound discretion of the court. *Muhammad v. McGinnis,* 362 F.2d 587 (2d Cir. 1966). Mr. Bennett cites the decision of *Estep v. United States,* 251 F.2d 579, 582 (5th Cir. 1958) for the proposition that his status gained in the criminal proceedings should be automatically transferred to the civil proceedings. Because of Mr. Bennett's position as intervenor, the issue of his financial status had not been previously prompted by monetary filing obligations or costs in this civil proceeding. However, even with the understanding that Mr. Bennett is proceeding *pro· se,* it must be emphasized that the purpose of § 1915 is to insure that litigants are not barred from federal court for financial reasons. Furthermore, the nature of the case may legitimately reflect upon a request to proceed in forma pauperis. *Leverett v. Bishop,* 451 F.Supp. 289, 292–4 (D.S.C.1978). Considering the relatively small sum of less than sixty dollars, and considering Mr. Bennett's noncompliance with the requisites of § 1915, and the fact that he is not suing to recover damages, but rather intervening in an action with the hope of staying the enforcement of an IRS summons, this Court finds no reason to extend the leniency of § 1915 in this case.

Clearly· there appears a distinct difference in affording Mr. Bennett the privilege of § 1915 to defend himself in a criminal action, and alternatively denying that privilege in this intervention proceeding.

Finally, Mr. Bennett introduced several additional motions at the time he moved to intervene in this action. Those seeking dismissal for lack of jurisdiction simply attempt to apply an incorrect analysis of the law, or draw factual assumptions about the purpose of this tax investigation which remain wholly unsubstantiated following this hearing. The remaining motion to dismiss attempts to utilize First Amendment grounds, yet the intervenor has not alleged any diminution of his expressions regarding income tax policies as a result of this attempted verification of his civil tax liability. Certainly Mr. Bennett is free to instigate an action against the IRS for a violation of his constitutional rights, but he may not utilize such a theory on his own motion to dismiss. Of course Mr. Bennett's motion to compel this Court to hold a hearing is now moot, leaving no other pending motions brought on by the intervenor in this action.

For these reasons, it be and hereby is ORDERED, that the petitioner's motion for witness fees and attendant costs of appearance is granted, and further, that the parties are instructed to respond to the IRS summons enforcement Orders issued by this Court this same date.