**In re Robert LAUX, Debtor.**

**Bankruptcy No. 94–31311.**

United States Bankruptcy Court,
S.D. Illinois.

April 26, 1995.

William Mueller, Belleville, IL, for debtor.

Hendricks & Hagen, Carbondale, IL, for Scott Credit Union.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Prior to filing his bankruptcy petition, debtor entered into a loan agreement with Scott Credit Union ("SCU"). Pursuant to the terms of the agreement, SCU had the authority "to place a lien on (to freeze) [debtor's] present and future shares, share certificates and dividends to the extent of that portion of [debtor's] loan which is in default...." *See* Exhibit A attached to SCU's Memorandum in Opposition to Debtor's Motion for Sanctions. The agreement also granted to SCU "a security interest in [debtor's] present and future share draft, share certificate and other deposit accounts...." *Id.*

On December 1, 1994, debtor filed a chapter 7 bankruptcy petition. At the time of filing, debtor maintained a share draft account with SCU that had an account balance of $365.75. On December 7, 1994, SCU placed an administrative freeze on the account balance which, by then, was $425.66. On the same date, SCU notified debtor's attorney, by letter, that it held a claim against debtor in the amount of $3,710.51, and that all funds on deposit with SCU were being frozen pending final resolution of the matter by the bankruptcy court. In the letter, SCU also asserted its right to set off its claim against debtor's account, although, to date, SCU has taken no further action to remove the funds from debtor's account. As a result of the freeze, certain checks of the debtor were dishonored.

On December 15, 1994, debtor filed a motion for sanctions. Debtor contends that the freeze violates the automatic stay and requests that the Court "enter such sanctions as deemed appropriate to prevent such unilateral actions by this creditor and other similar creditors." Debtor's Motion for Sanctions at ¶ 7.

Specifically, debtor alleges that the freeze on his account violates §§ 362(a)(3), 362(a)(5) and 362(a)(7) of the Bankruptcy Code. Whether an administrative freeze violates any one or all of these provisions is the subject of ongoing debate. The controversy has resulted in a split of authority among the various courts that have addressed this issue. After reviewing the relevant case law, the Court concludes that in this case, SCU's imposition of an administrative freeze was proper and did not violate any of the specific Code provisions cited by debtor.

■ Debtor first contends that the freeze violates § 362(a)(3) of the Bankruptcy Code, which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." 11 U.S.C. § 362(a)(3). Debtor alleges that the freeze constitutes "an act to exercise control over property of the estate." For the reasons set forth below, the Court finds that debtor has no standing to raise this argument.

In a chapter 7 proceeding, the debtor, upon filing, "is automatically 'divested of virtually all property interests held as of the commencement of the case and, in turn, these interests immediately vest in the estate.'" *In re Pimental,* 142 B.R. 26, 28 (Bankr.D.R.I.1992) (citing *Commercial Credit Business Loans, Inc. v. Northbrook Lumber Co.,* 22 B.R. 992 (N.D.Ill.1982)). *See also In re Hoffman,* 51 B.R. 42, 45 (Bankr. W.D.Ark.1985) (in a chapter 7 case, title to the estate vests in the trustee). "As a result, the debtor loses title to and is prohibited from using estate assets for any purpose." *In re Pimental,* 142 B.R. at 28. Title to estate property does not revest in the debtor until, for example, the property is either properly claimed and allowed as exempt, or

abandoned by the trustee.[1] Therefore, when debtor filed his chapter 7 petition, the funds on deposit with SCU became property of the estate [2] subject to the control of the chapter 7 trustee. Accordingly, the only party with standing to raise a violation of § 362(a)(3) is the trustee.

In *In re Briggs,* 143 B.R. 438 (Bankr. E.D.Mich.1992), a chapter 7 case also involving an administrative freeze, the court reached the same conclusion, explaining:

> Because §§ 362(a)(3) and (4) relate solely to property of the estate, it is difficult to understand how the Credit Union violated those provisions in this case. By definition, a debtor no longer has rights in estate property: the trustee acquires all such rights upon commencement of the case. Thus the refusal of the Credit Union to release property of the estate to the *Debtor* (as opposed to the trustee) clearly is not a stay violation; indeed, such a refusal would be entirely prudent and appropriate. I therefore summarily reject the Debtor's contention that the Credit Union violated §§ 362(a)(3) or (4)....

*Id.* at 445 (emphasis in original).

Debtor cites two cases—*In re Patterson,* 967 F.2d 505 (11th Cir.1992) and *In re Flynn,* 143 B.R. 798 (Bankr.D.R.I.1992)—in support of his argument that the freeze constitutes a violation of § 362(a)(3). In *Patterson,* the court found that a credit union's freeze of debtors' accounts "deprived the [debtors] of any control over [the] funds and invested exclusive control in the Credit Union." *Patterson,* 967 F.2d at 512. The court concluded that "[s]uch conduct violates the express terms of Section 362(a)(3)." *Id. Patterson,* however, was a chapter 13 case and is therefore not applicable in the instant proceeding.

---

1. The debtor did not list the funds in question as exempt. On December 30, 1994, the trustee filed a "Report of No Distribution and Statement of Abandonment of Property," indicating that there were no assets to be distributed, and abandoning "any scheduled property." Nevertheless, at the time of the freeze on December 7, 1994, the funds were property of the estate subject to the control of the trustee.

2. Section 541(a) of the Bankruptcy Code provides that the estate "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Included within the extensive scope of § 541(a) are funds on deposit in a debtor's savings or checking accounts." *In re Pimental,* 142 B.R. at 28.

Likewise, in *Flynn*, the court held that "[t]he placing of an administrative freeze on a debtor's bank account is undeniably an act designed to 'exercise control over property of the estate,' and [therefore] an express violation of the automatic stay." *Flynn*, 143 B.R. at 801. Although *Flynn* was a chapter 7 proceeding, the court did not address the question of debtor's standing, nor did the court explain why the debtor should continue to control prepetition funds when the Code requires that these funds be turned over to the chapter 7 trustee. For these reasons, the Court finds the holding in *Flynn* unpersuasive.

■ Debtor also contends that the freeze violates § 362(a)(5) of the Bankruptcy Code, which stays "any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title...." 11 U.S.C. § 362(a)(5).[3] It is clear that the freeze is not an act to create or perfect a lien. Debtor's argument appears to be that the freeze constitutes an act to enforce a lien. Assuming *arguendo* that debtor has standing to raise this argument, the Court nonetheless disagrees. Enforcement of a lien generally involves an affirmative act by the creditor against the collateral. *In re Briggs*, 143 B.R. at 446. Here, SCU has not acted to enforce its lien—that is, no funds have been removed from debtor's account to reduce the loan balance. Accordingly, there has been no violation of § 362(a)(5).

■ Finally, debtor contends that SCU violated § 362(a)(7), which stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor...." 11 U.S.C. § 362(a)(7). The Court seriously questions whether debtor has standing to raise this argument, since, as previously discussed, the funds in debtor's account were property of the estate at the time the freeze was imposed. *See In re Briggs*, 143 B.R. at 447 (chapter 7 debtor lacks standing to assert a violation of § 362(a)(7)); *Matter of Lee*, 40 B.R. 123, 126 (Bankr.E.D.Mich.1984) (chapter 7 trustee is proper party to bring a § 362(a)(7) violation). However, even assuming *arguendo* that debtor does have standing, the court finds, for the reasons set forth below, that no violation of § 362(a)(7) occurred.

SCU's freeze of debtor's account merely preserved the status quo of the parties as of the petition date to allow the Court an opportunity to determine the proper disposition of the funds. During the pendency of the bankruptcy proceeding, SCU has taken no action to remove the funds from debtor's account or to credit debtor's loan balance. In short, there has been no affirmative act by SCU to complete a setoff. As explained by the court in *In re Moreira*, 173 B.R. 965 (Bankr. D.Mass.1994):

> Although a freeze, like a setoff, denies use of the account, there is technically no setoff until the Credit Union makes an entry on its books applying the account against the debt. Without such an entry, the account continues to bear interest, so there is an economic difference between a freeze and setoff.

*Id.* at 967. *See also In re Edgins*, 36 B.R. 480, 484 (9th Cir. BAP 1984); *In re Gifford*, 174 B.R. 231, 233 (Bankr.W.D.Ky.1994) (temporary freeze that maintains status quo of parties does not violate automatic stay). *Contra In re Strumpf*, 37 F.3d 155, 158 (4th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 1398, 131 L.Ed.2d 286 (1995) (an administrative freeze on debtor's bank account is tantamount to the exercise of a right of setoff and thus violates § 362(a)(7)). Realizing that its right of setoff might be lost without im-

---

**3.** The parties agree that SCU has a lien on the funds in debtor's account pursuant to both the terms of the loan agreement and the Illinois Credit Union Act. That Act provides, in relevant part, as follows:

> Without being required to take any action to perfect the same, a credit union shall have a lien on the shares, accumulated dividends or interest of a member in his individual, joint or trust account, for any sum due the credit union from said member.... A credit union may refuse to allow the withdrawal of a member's shares while the member has any outstanding obligation to the credit union. A member's shares may be offset against any sum due to the credit union....

205 ILCS 305/43.

mediate action, SCU properly froze debtor's account to maintain the status quo and to prevent dissipation of the funds by debtor. Without proof that SCU actually exercised its right of setoff while the stay was in effect, debtor's argument that SCU violated § 362(a)(7) must fail.

 The Court's decision that SCU did not violate the automatic stay is consistent with § 542(b) of the Bankruptcy Code, which provides, in part, as follows:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*

11 U.S.C. § 542(b) (emphasis added).[4] It would appear, then, that § 542(b) "allow[s] a creditor of the estate who may have a right to setoff funds owing to the debtor or the estate, to defer payment pending a hearing on the right to setoff." *In re Edgins,* 36 B.R. at 483. Thus, the Code recognizes that "an entity claiming a right of setoff may retain such funds until its setoff right is determined." 4 *Collier on Bankruptcy* ¶ 553.15[6] at 553–85 (15th ed. 1995). *See also In re Tillery,* 179 B.R. 576, 580 (Bankr. W.D.Ark.1995) (a creditor's right to impose an administrative freeze can be implied when §§ 362(a)(7), 542(b) and 553 are read together); *In re Air Atlanta, Inc.,* 74 B.R. 426, 427 (Bankr.N.D.Ga.1987), *aff'd,* 81 B.R. 724 (N.D.Ga.1987); *In re Williams,* 61 B.R. 567, 573 (Bankr.N.D.Tex.1986) (the specific permission granted to a creditor in § 542(b) to retain funds subject to setoff should prevail over the general restrictions set forth in §§ 362(a)(3) and (7)); *In re Hoffman,* 51 B.R. 42, 45 (Bankr.W.D.Ark.1985) (§ 542(b) excludes from a turnover action the amount of any setoff). A temporary freeze that maintains the status quo pending judicial action is, therefore, consistent with and counte-

nanced by § 542(b), and does not constitute a violation of the automatic stay.

Accordingly, for the reasons stated, IT IS ORDERED that debtor's motion for sanctions is DENIED.

---

**4.** Section 553 provides, in relevant part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to

the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553(a).