## In re David MERRITT, Debtor.

## UNITED STATES of America, Plaintiff,

## v.

## David MERRITT, Defendant.

Bankruptcy No. 94–40855.
Adv. No. 95–4009.

United States Bankruptcy Court,
S.D. Illinois.

Sept. 8, 1995.

---

Gerald Burke, Assistant U.S. Attorney, Fairview Hgts, IL, for plaintiff U.S.

David Merritt, Marion, IL, debtor pro se.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Shortly after implementation of this Court's in forma pauperis program authorizing the waiver of filing fees for eligible Chapter 7 debtors ("IFP program"),[1] debtor David Merritt sought and obtained a waiver of the filing fee for commencing his Chapter 7 bankruptcy case. The debtor subsequently

obtained a discharge of over $2,600 in debts owing to his only creditor, the United States of America, but, in an adversary proceeding filed by that creditor, the Court ruled that a debt of $47.25 was nondischargeable as a penalty under 11 U.S.C. § 523(a)(7). The debtor filed a notice of appeal from that decision and now seeks a waiver of the filing fee for the appeal and a waiver of the costs of preparing a transcript. The debtor's request presents an issue of first impression concerning the criteria for determining a debtor's eligibility to proceed in forma pauperis on appeal from an adversary proceeding following implementation of the IFP program.

## I. FACTS

The debtor is an inmate at the United States penitentiary in Marion, Illinois. During his incarceration, he accumulated debts of $2,675 owing to the United States government, which consisted largely of photocopying and postage charges incurred through filing various legal actions.[2] This amount also included penalties imposed by prison officials for destroying a bed sheet ($6.90), for destroying a typewriter ribbon ($5.25), and for altering a radio, making it unfit for use ($42.00). The United States filed a complaint seeking a determination that these debts were nondischargeable as penalties under § 523(a)(7).[3] Subsequently, prison officials placed a freeze on the debtor's commissary account in the amount of the penalties.

The debtor responded to the government's complaint with a counter-complaint asserting that the alleged penalties were "false" and illegally imposed as a result of "baseless

---

1. Pursuant to Congress' directive, the Judicial Conference of the United States instituted a three-year pilot program beginning October 1, 1994, to study the effect of waiving bankruptcy fees for individual Chapter 7 debtors who are unable to pay such fees in installments. *See* Pub.L. No. 103–121, § 111(d), 28 U.S.C. § 1930, Statutory Notes, Report on Bankruptcy Fees. The Southern District of Illinois was selected as one of six judicial districts to participate in the fee waiver program.

2. The debtor's petition references eight civil actions filed since August 1989 by the debtor against the government and against prison offi-

cials in Marion and other locations where he has been incarcerated.

3. Section 523(a)(7) provides that a discharge under 11 U.S.C. § 727 does not discharge a debtor from a debt

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ...

 . . . .

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.
11 U.S.C. § 523(a)(7).

allegations" and were, in any event, dischargeable under § 523(a)(7). The debtor further filed a third-party complaint against various prison officials, seeking sanctions for actions allegedly taken in violation of the automatic stay and in retaliation for his bankruptcy filing, including the freezing of his commissary account.

At trial held at the Marion penitentiary on May 11, 1995, the United States conceded the dischargeability of the $6.90 penalty for destruction of the bed sheet as having been imposed more than three years prior to the debtor's bankruptcy filing. *See* 11 U.S.C. § 523(a)(7)(B). After hearing evidence consisting of testimony from prison officials and inmates in a nearly day-long trial, the Court determined that a total amount of $47.25—owed for destroying the typewriter ribbon and altering the radio—was nondischargeable as a penalty pursuant to § 523(a)(7). The Court entered judgment for the government in part and for the debtor in part on the dischargeability complaint and counter-complaint. The Court further found that no sanctions were warranted for the prison officials' actions in freezing the debtor's commissary account and entered judgment against the debtor on his third-party complaint.

The debtor filed a notice of appeal from that decision, as well as a motion for transcript and a statement of issues planned for appeal. In his statement of issues, the debtor asserted that the Court erred in the following respects: (1) in determining that the $47.25 debt was nondischargeable; (2) in refusing to sanction prison officials for freezing his commissary account in violation of the Bankruptcy Code; (3) in not allowing him free hands to adequately access his materials during the trial; (4) in not affording him an attorney or "other means to ascertain what was needed" to defend himself; and (5) in failing to protect him from an assault by prison officials which occurred on May 17, 1995. The debtor subsequently filed a motion to proceed in forma pauperis on appeal in which he asserted that he was unable to pay for the appeal and referred to his affidavit of indigency previously filed in obtaining a waiver of the fee for filing his bankruptcy petition.[4]

## II. DISCUSSION

### A. In Forma Pauperis Relief in Bankruptcy

Prior to October 1, 1994, when Congress authorized in forma pauperis bankruptcy filings in selected judicial districts, a debtor who could not afford the filing fee for commencing a bankruptcy case was prohibited from obtaining bankruptcy relief, as both statutory and case law established that 28 U.S.C. § 1915(a), the general statute providing in forma pauperis relief in federal courts,[5] did not allow for waiver of the fees for filing a bankruptcy petition. In *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Supreme Court, observing that there is "no constitutional right to obtain a discharge of one's debts in bankruptcy," 409 U.S. at 446, 93 S.Ct. at 638, ruled that § 1915(a) was not applicable to bankruptcy cases and upheld the statutory fee requirements as not violative of due process or equal protection rights.[6] 409 U.S. at 440, 446, 93 S.Ct. at 635, 638. When the Bankruptcy Code was enacted in 1978, Congress essentially codified the holding of *Kras* in 28 U.S.C. § 1930(a), which sets forth the filing fees for commencing bankruptcy cases.

**4.** The Court is reviewing the debtor's in forma pauperis motion pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 30 of the Local Rules of the United States District Court for the Southern District of Illinois.

**5.** Section 1915(a) provides:

(a) Any court of the United States may authorize the commencement ... of any suit ..., civil or criminal, or appeal therein, without prepayment of fees and costs ... by a person who makes affidavit that he is unable to pay such costs.... Such affidavit shall state the nature of the action ... or appeal and affiant's belief that he is entitled to redress.
28 U.S.C. § 1915(a).

**6.** Under the Bankruptcy Act in effect when *Kras* was decided, failure to pay the filing fee was a statutory ground for denial of a debtor's discharge. *See Kras*, 409 U.S. at 435–36, 93 S.Ct. at 633. While this provision was not retained under the present Bankruptcy Code, the Code provides for dismissal of a bankruptcy case for a debtor's failure to pay the filing fee. *See* 11 U.S.C. § 707(a)(2); Fed.R.Bankr.Proc. 1017(b).

*See In re Clark,* 173 B.R. 142, 145 (Bankr. W.D.Tenn.1994). Section 1930(a) excepts such fees from the general in forma pauperis authority of § 1915(a), providing that *"[n]ot-withstanding section 1915 of this title,* the parties commencing a case under title 11 *shall pay* the ... following filing fees...." 28 U.S.C. § 1930(a) (emphasis added).

■ Legislation authorizing the IFP program in this and other selected districts removed the prohibition against in forma pauperis bankruptcy filings and allowed for a waiver of fees under § 1930 for individuals in Chapter 7 cases "who are individuals unable to pay such fees in installments." 28 U.S.C. § 1930, Statutory Notes, Report on Bankruptcy Fees.[7] Neither the legislation nor Judicial Conference guidelines implementing the IFP program set forth a standard for determining a debtor's inability to pay.[8] In the absence of such a standard, courts participating in the program have applied a general indigency standard similar to that employed under § 1915(a) to determine a debtor's financial eligibility for in forma pauperis relief. *See In re Koren,* 176 B.R. 740, 742–46 (Bankr.E.D.Pa.1995); *In re Clark,* 173 B.R. at 146 (fee waiver applications under IFP program should be examined on a case by case basis, taking into consideration the to-

tality of pre- and post-petition facts and circumstances).

. ■ Thus far, the reported cases determining a debtor's eligibility for a waiver of fees under the IFP program have been concerned only with fees for filing a petition under § 1930(a). As a result, these decisions have not addressed the issue now before the Court of the standard to be employed in determining a waiver of fees required under § 1930(b) and (c) for filing an appeal in an adversary proceeding.[9] Here, again, in the absence of a specified standard for determining fee waiver eligibility for such appeals under the IFP program, it is appropriate to look to § 1915 and the standards employed in determining in forma pauperis appeals under that statute. Indeed, it appears that such a result was contemplated by the IFP subcommittee appointed by the Judicial Conference to formulate guidelines for the IFP program. In discussing the waiver of fees scheduled pursuant to § 1930(b) and (c), the subcommittee directed that requests to proceed on appeal from denial of a fee waiver application without payment of the $105 filing fee for the appeal "should be treated and administered like similar requests under 28 U.S.C. § 1915...." IFP Subcommittee Guidelines for Processing Fee Waiver Appli-

7. The IFP legislation, enacted as part of the "Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1994," provides in pertinent part:

(d) REPORT ON BANKRUPTCY FEES.
(1) REPORT REQUIRED. Not later than March 31, 1998, the Judicial Conference of the United States shall submit to the Committees on the Judiciary of the House of Representatives and the Senate, a report relating to the bankruptcy fee system and the impact of such system on various participants in bankruptcy cases.
(2) CONTENTS OF REPORT. Such report shall include—
(A)(i) an estimate of the costs and benefits that would result from waiving bankruptcy fees payable by debtors who are individuals....

. . . .

(3) WAIVER OF FEES IN SELECTED DISTRICTS. For purposes of carrying out paragraphs (1) and (2), the Judicial Conference of the United States shall carry out in not more than six judicial districts, throughout the 3–year period beginning on October 1, 1994, a program under which fees payable under section 1930 of title 28, United States Code, may

be waived in cases under chapter 7 of title 11, United States Code, for debtors who are individuals unable to pay such fees in installments. Pub.L. No. 103–121, § 111(d)(3), 107 Stat. 1153, 1165 (1993).

8. An IFP subcommittee appointed by the Judicial Conference issued "Guidelines and Procedures To Implement and Carry Out the In Forma Pauperis Pilot Program and Study," which were incorporated in substantial part in this Court's order implementing the IFP program in this district. *See* Standing Order, Admin. No. 3–94, entered August 30, 1994. The IFP subcommittee later issued revised "Guidelines for Processing Fee Waiver Applications and the Underlying Chapter 7 Cases" on September 23, 1994.

9. Item (16) of the Judicial Conference's schedule of fees prescribed pursuant to § 1930(b) provides a fee of $100 for docketing an appeal from a bankruptcy court decision. *See* 28 U.S.C. § 1930, Statutory Notes, Bankruptcy Court Fee Schedule (16). Section 1930(c) further provides that "[u]pon the filing of any ... notice of appeal ... $5 shall be paid to the clerk of the court, by the appellant...."

cations and the Underlying Chapter 7 Cases, issued September 23, 1994, at 4. The IFP subcommittee did not specifically discuss appeals from adversary proceedings, and there is no indication that it considered the issue of fee waivers in such appeals. However, its references to § 1915 in discussing the waiver of fees under § 1930(b) and (c) support this Court's consideration of § 1915 cases in its search for an appropriate standard in this case.[10]

## B. In Forma Pauperis Relief under § 1915

■ Qualification for in forma pauperis relief under § 1915 requires not only financial eligibility but also legal eligibility for such relief.[11] See generally Robert S. Catz and Thad M. Guyer, Federal In Forma Pauperis Litigation: In Search of Judicial Standards, 31 Rutgers L.Rev. 655, 671–673 (1978). Congress, while opening the federal courts to individuals with rights to be adjudicated but inadequate means to pay the filing fees, at the same time attempted to safeguard these courts from vexatious litigation that would require a disproportionate expenditure of time and judicial resources. See Note, Petitions To Sue In Forma Pauperis in Federal Courts: Standards and Procedures for the Exercise of Judicial Discretion, 56 Boston U.L.Rev. 745, 746–47 (1976). Section 1915 contains such a safeguard in requiring an applicant to file an affidavit stating the nature of the action for which in forma pauperis relief is sought and the applicant's belief that he is entitled to redress. See 28 U.S.C. § 1915(a). This requirement and the statute's wording that a court "may authorize" in forma pauperis filings indicate that the court is to examine the merits of the claim and exercise discretion in deciding whether to grant a request for in forma pauperis relief. See Wartman v. Branch 7, Civil Div., County Ct., 510 F.2d 130, 132 (7th Cir.1975). In addition, § 1915(d) allows the Court to dismiss an action once filed if it is satisfied that the action is "frivolous or malicious." 28 U.S.C. § 1915(d). With regard to appeals, the statute provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a). This "good faith" requirement is an objective one based on the legal merit of the issues sought to be appealed. See Coppedge v. United States, 369 U.S. 438, 445, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962); Linden v. Harper and Row Publishers, 490 F.Supp. 297, 299–300 (S.D.N.Y.1980).

■ While such language is specific to § 1915, the requirement that a court consider the legal merit of an action or appeal in determining fee waiver eligibility is equally relevant in the present context of an appeal from a bankruptcy adversary proceeding. The filing of a bankruptcy petition commences a process which may involve numerous and distinct causes of action filed as adversary proceedings. See Merrill Trust Co. v. Red Barn, Inc. (In re Red Barn, Inc.), 23 B.R. 593, 595 (Bankr.D.Me.1982). These causes of action, resulting from the broad jurisdiction granted bankruptcy courts, are

---

**10.** The IFP subcommittee further noted the split of authority that currently exists concerning whether bankruptcy courts have authority under § 1915 to waive fees in adversary proceedings and appeals. Compare In re Perroton, 958 F.2d 889 (9th Cir.1992) and In re Ennis, 178 B.R. 192 (Bankr.W.D.Mo.1995) (holding that the bankruptcy court is not a "court of the United States" and thus is without authority to waive fees under § 1915) with In re Melendez, 153 B.R. 386 (Bankr.D.Conn.1993); In re Shumate, 91 B.R. 23 (Bankr.W.D.Va.1988); and In re Palestino, 4 B.R. 721 (Bankr.M.D.Fla.1980) (holding that bankruptcy courts have the authority to waive fees under § 1915). The reasoning of the latter courts is either that the bankruptcy court is a "court of the United States" and so has the authority to waive fees under § 1915; that the bankruptcy court has authority to waive fees

under the general order of reference entered pursuant to 28 U.S.C. § 157(a); or that Congress intended the absolute requirement that fees be paid to apply only to the fee for filing a petition as set forth in 28 U.S.C. § 1930(a). This Court takes no position on the issue because, although the IFP legislation did not make § 1915 applicable to bankruptcy proceedings, it specifically authorized this Court to waive fees required under § 1930 in Chapter 7 bankruptcy proceedings.

**11.** There is no question in this case of the debtor's financial eligibility for in forma pauperis relief. The debtor sought and obtained a fee waiver for filing his initial bankruptcy petition, and his financial circumstances have not changed since that time.

commenced by the filing of a complaint and are comparable to civil actions in a nonbankruptcy context. *See* Fed.R.Bankr.P. 7001(1)–(10). Although legal merit is not an issue in determining a fee waiver request for filing the bankruptcy petition itself,[12] a requirement of legal merit serves the same purpose as under § 1915 when a fee waiver is sought on appeal from an action filed as an adversary proceeding.[13] The Court, accordingly, adopts the § 1915 requirement of legal merit in considering the debtor's application for in forma pauperis relief in this adversary appeal.

██ Courts reviewing in forma pauperis applications under § 1915 have employed a variety of standards to determine the legal merit of the action or appeal involved. *See* Note, *supra*, at 747. While some courts set a strict standard of "exceptional circumstances," requiring the applicant to demonstrate circumstances "that would dictate immediate litigation at the expense of others," *Shobe v. California*, 362 F.2d 545, 546 (9th Cir.) *cert. denied*, 385 U.S. 887, 87 S.Ct. 185, 17 L.Ed.2d 115 (1966); *see Weller v. Dickson*, 314 F.2d 598, 600 (9th Cir.), *cert. denied*, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963), the test is most often stated in terms of "frivolousness" because of the language of § 1915(d) allowing for dismissal of an action found to be "frivolous or malicious." *See Coppedge v. United States*, 369 U.S. at 446–47, 82 S.Ct. at 921–22. However, even that standard is subject to interpretation, with some courts requiring only a minimal showing of a "rational argument on the law or facts" for an action to qualify as nonfrivolous and others requiring a more substantial showing of a "realistic chance of success" on the merits. *See* Note, *supra*, at 749–53; *see e.g., Malone v. Colyer*, 710 F.2d 258, 260–61 (6th Cir.1983) (adopting "rational argument"

test and collecting cases); *Jones v. Bales*, 58 F.R.D. 453, 463–464 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir.1973) (applying "realistic chance of success" standard). The "rational argument" standard was developed by the Supreme Court in *Coppedge v. United States* in reviewing an application to appeal in forma pauperis from a criminal conviction. The *Coppedge* court ruled that a defendant in a criminal appeal need not show any degree of merit or likelihood of success but was entitled to be heard "if he makes a rational argument on the law or facts." 369 U.S. at 448, 82 S.Ct. at 922. In formulating this minimal standard, the *Coppedge* court acknowledged that it was motivated "by considerations beyond the corners of 28 U.S.C. § 1915" and referred to the fact that an appeal in a criminal case is "a matter of right." 369 U.S. at 446–47, 82 S.Ct. at 922. The court further noted the "awesome step" taken by society when it acts to deprive one of its members of "life, liberty or property." 369 U.S. at 449, 82 S.Ct. at 923. The concerns enunciated in *Coppedge*, therefore, resulted from the particular importance of criminal prosecutions to society rather than the specific requirements of § 1915. *See* Note, *supra*, at 750.

The minimal standard of *Coppedge* has been applied in habeas corpus and civil rights actions which, although nominally civil in nature, involve liberty interests that are constitutionally protected. *See Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989); *Malone v. Colyer*. As in *Coppedge*, due process and equal protection considerations mandate a more lenient standard for allowing in forma pauperis applications in these cases, despite their civil character. *See* Note, *supra*, at 750. However, extension of the *Coppedge* "rational argument" standard to habeas cor-

---

**12.** Since the legal eligibility requirements for filing a bankruptcy petition are set forth by statute, *see* 11 U.S.C. § 109, a fee waiver request for filing a petition involves only a determination of the debtor's financial eligibility for such relief.

**13.** The Judicial Conference has directed that a debtor filing an adversary proceeding is not required to pay the $120 filing fee required of other parties. *See* 28 U.S.C. § 1930, Statutory Notes, Bankruptcy Court Fee Schedule (6). Since this

amounts to an automatic fee waiver for commencing a civil action in the bankruptcy context, there would be no consideration of the legal merit of such an action unless, as in this case, the debtor sought to appeal in forma pauperis from a decision in the adversary proceeding. There is, of course, no automatic fee waiver for a debtor filing an appeal in an adversary proceeding. *See* 28 U.S.C. § 1930(c) & Statutory Notes, Bankruptcy Court Fee Schedule (16).

pus and civil rights actions does not argue for its application to cases, such as the present one, in which economic rather than liberty interests are at stake. Instead, the *Coppedge* decision indicates that the standard to be applied in determining in forma pauperis relief depends, in large part, on the nature of the interest being asserted in the underlying cause of action. *See Schweitzer v. Scott,* 469 F.Supp. 1017, 1019–20 (C.D.Cal.1979); *see also United States v. Jeff–Lewis Savings & Loan Assoc.,* 530 F.Supp. 623, 628 (N.D.N.Y. 1982).

■■■ Unlike the right to appeal a criminal conviction or seek redress for a violation of civil rights, obtaining a discharge of one's debts in bankruptcy is a matter of legislative grace, not a constitutional right. *See United States v. Kras,* 409 U.S. at 446–47, 93 S.Ct. at 638–39. A denial of discharge as to certain debts does not result in imprisonment or a monetary penalty, but merely withholds the statutory benefit otherwise available regarding those debts. *See Transamerica Premier Ins. Co. v. Chaplin (In re Chaplin),* 179 B.R. 123, 128 (Bankr.E.D.Wis.1995). As a result, an individual seeking the benefit of bankruptcy legislation has no constitutional right of access to the courts. *See Kras,* at 446, 93 S.Ct. at 638. Rather, in this "area of economics and social welfare," *id.,* a stricter standard for reviewing in forma pauperis applications is justified to fulfill the statutory purpose of providing equal access to the courts for paying and nonpaying litigants. *See* Note, *supra,* at 751–53. Unlike a paying litigant who must weigh the costs of bringing suit against the economic benefit to be derived, a nonpaying litigant has no economic disincentive to sue. Requiring such a litigant to show a reasonable likelihood of success before granting in forma pauperis relief incorporates into the court's evaluation the factors a paying litigant would consider in his decision to sue—the chance of success balanced against the anticipated cost of bringing suit. Thus, although application of the stricter "realistic chance of success" standard imposes a condition on in forma pauperis relief that is not required of the paying litigant, it actually places an indigent litigant on a more equal footing with a litigant who can bear the costs of suit. *Id.,* at 753.

■■ Based on this reasoning, the Court finds that the debtor's claims in this adversary appeal should be judged by whether they present a substantial question on which the debtor has a "realistic chance" or "reasonable likelihood of success" on the merits. This standard is sufficiently high to compensate for the lack of financial constraints on the debtor while also providing access to the court for litigating substantial claims. Given the economic interests involved in bankruptcy adversary proceedings, such a standard appropriately limits the benefit of in forma pauperis relief to those instances in which the substance of the claims to be litigated justifies the costs associated with such litigation.

### C. The Debtor's Claims on Appeal

■■ The first of the five issues presented for appeal by the debtor relates to the Court's finding that the $47.25 debt owed to the government is nondischargeable as a penalty under § 523(a)(7). The debtor asserts that this debt is not a penalty for purposes of § 523(a)(7) and is, therefore, dischargeable.

■■■ In order for a debt to be nondischargeable as a penalty under § 523(a)(7), it must be to and for the benefit of a governmental unit and it must be penal in nature. *Kelly v. Robinson,* 479 U.S. 36, 51–52, 107 S.Ct. 353, 361–62, 93 L.Ed.2d 216 (1986). The $47.25 debt clearly meets the first prong of this test in that it is owed to the United States government. The question of whether it was intended to punish the debtor for his wrongful conduct is a mixed question of law and fact. After hearing testimony of prison officials and considering evidence submitted by the parties, the Court found that the debt was penal in nature and was not intended to compensate the government for pecuniary losses. *See Matter of Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985). Under the "clearly erroneous" standard applicable to such a determination, *see Williams v. Commissioner,* 1 F.3d 502, 505 (7th Cir.1993), this finding would be set aside on appeal only if the reviewing court were "left with the definite and firm conviction" that a mistake had been

committed. *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

■ Based on the record in this case, it is unlikely that a reviewing court would be left with a "definite and firm" conviction of error that would justify reversal on this issue. The Court's findings were based, in part, on its determinations of witness credibility, and the debtor presented no evidence to show the pecuniary nature of the penalties other than the amount of the penalty imposed. The fact that a penalty is measured by the expenses incurred does not convert the penalty into compensation for actual pecuniary loss. *Zarzynski*, at 306. Prison documents refer to the debt as "sanctions imposed to punish Inmate Merritt and impress upon him the gravity of his actions and ... deter him from such actions in the future." Moreover, the context in which the penalty was imposed—an inmate disciplinary proceeding—demonstrates that the debt was not a pecuniary award but, rather, a punitive one. The Court concludes, therefore, that this issue presents no substantial question for review and that the debtor has no realistic chance for success on appeal that would justify a grant of in forma pauperis relief.

■ The debtor next contends that the Court erred in not sanctioning government officials for freezing his commissary account at the penitentiary in violation of the automatic stay. Section 362(a)(7) stays "the setoff of any debt that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). This Court has held that a temporary freeze which maintains the status quo of the parties does not violate the automatic stay when there is no affirmative act by the creditor to complete the setoff. *In re Laux*, 181 B.R. 60, 62–63 (Bankr.S.D.Ill. 1995); *In re Gifford*, 174 B.R. 231, 233 (Bankr.W.D.Ky.1994). In this case, the freeze on the debtor's commissary account merely preserved the status quo of the parties to allow the Court an opportunity to determine the proper disposition of the funds, and prison officials took no action

during pendency of the bankruptcy proceedings to remove the funds from the debtor's commissary account. Under the reasoning of *Laux*, in the absence of proof that prison officials actually exercised their right of setoff, the debtor's claim of violation of the automatic stay must fail. *Laux*, at 63.

■ The Supreme Court is currently considering the issue of whether an administrative freeze placed on a debtor's bank account is tantamount to a setoff constituting a violation of the stay. *See Citizens Bank of Maryland v. Strumpf (In re Strumpf)*, 37 F.3d 155 (4th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 1398, 131 L.Ed.2d 286 (1995). However, even if *Strumpf* is decided contrary to this Court's decision in *Laux*, its application in a prison situation such as the present one is questionable. Prison officials have great flexibility in matters of prison administration and, as a result, have more authority over financial affairs of prisoners in their charge than creditors in ordinary commercial situations. One of the justifications for regarding an administrative freeze as tantamount to a setoff in a nonprison context is that both an administrative freeze and a setoff effectively deprive a debtor of the use of his funds to provide for necessary living expenses. *See Strumpf*, 37 F.3d at 158. In the prison context, by contrast, the debtor's living expenses are supplied by the government and his needs are met whether or not he is temporarily deprived of commissary privileges due to an administrative freeze. The *Strumpf* rationale, therefore, is inappropriate to this prison situation and, since there was no violation of the stay under *Laux*, the debtor's argument that the Court erred in refusing to sanction prison officials for freezing his commissary account fails to present a substantial question for review that would warrant a grant of in forma pauperis relief.

■ The debtor next argues that the Court erred in not allowing him "free hands to adequately access his materials, write, etc." Presumably, this claim arises from the Court's refusal to allow the debtor to remove his handcuffs during the May 1995 trial held at the penitentiary. The debtor asked the Court to remove the handcuffs but when the

Court refused, he made no further argument. An argument not presented at trial is waived for purposes of appeal. *Matter of Weber,* 25 F.3d 413, 415–16 (7th Cir.1994); *Matter of Hunter,* 970 F.2d 299, 306 (7th Cir.1992). Therefore, this claim of error raises no substantial question for review.

 The debtor also cites as error the Court's refusal to provide him an attorney "or other means to ascertain what was needed to defend himself." There is no right to counsel in a civil case. *See Howland v. Kilquist,* 833 F.2d 639, 646 (7th Cir.1987); *Caruth v. Pinkney,* 683 F.2d 1044, 1048, (7th Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983). Once again, no substantial question has been raised for review.

 The debtor asserts finally that the Court erred in failing to protect him from an assault by prison officials that occurred on May 17, 1995. The debtor raised this issue for the first time in his statement of issues for appeal. In fact, the alleged assault occurred six days after the trial on the dischargeability action that is the subject of the debtor's appeal. As a result, this issue could not have been presented at trial and is not properly presented in the debtor's appeal from that proceeding. In addition, this Court has no jurisdiction over matters of prison administration. Accordingly, the debtor has failed to raise a substantial issue that would justify in forma pauperis relief in this appeal.

### III. CONCLUSION

 Although no court likes to pass upon the correctness of its own decisions, a trial court must nevertheless deny in forma pauperis relief on appeal when it is convinced that there is no substantial question for review and that an appeal would be futile. *See Higgins v. Steele,* 195 F.2d 366, 369 (8th Cir.1952). The debtor in this case has been afforded the opportunity to fully litigate his claims, having first filed a counter-complaint and third-party complaint raising a multitude of issues and then enjoying a full trial on the merits, all without cost or obligation to himself. The Court, having considered numerous motions filed by the debtor and having conducted a trial of some duration on the parties' complaints and counter-complaint, is satisfied that the debtor's claims have been fully investigated and that there is no merit to the issues raised on appeal that would justify further litigation at public expense.

The Court is cognizant of the remedial purpose of the IFP legislation authorizing the waiver of fees in bankruptcy proceedings. *See generally* Henry J. Sommer, *In Forma Pauperis In Bankruptcy: The Time Has Long Since Come,* 2 Am.Bankr.Inst.L.Rev. 93 (1994). However, the Court doubts that Congress ever intended the result sought in this case—that an inmate housed at the taxpayers' expense could file a bankruptcy petition at the taxpayers' expense to discharge an obligation owed to the taxpayers and then, after having obtained a discharge of all but a minimal percentage of the obligation, appeal from this determination—again, at the taxpayers' expense. The $47.25 amount here at issue is de minimis when compared with the $105 filing fee and the transcript preparation charges for which the debtor seeks a waiver. While the minimal benefit to be obtained from an appeal in this case would not deter in forma pauperis relief if there were a substantial question for review, the Court finds, in its exercise of discretion, that there is no basis for in forma pauperis relief on the issues presented.

Accordingly, the Court will deny the debtor's motion for leave to proceed on appeal without payment of the filing fee. The Court will further deny the debtor's motion for a transcript. The debtor is granted leave to appeal from this denial of in forma pauperis relief without payment of the filing fee, and the Court's judgment in the dischargeability action will be stayed pending such appeal.

SEE WRITTEN ORDER.