**In re Stephanie V. STEPHENSON, Debtor.**

**Bankruptcy No. 96–30936DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 10, 1997.

**54**

Robert C. Blackmon, Philadelphia, PA, for Debtor.

Andrew Schwartz, Chapter 7 Trustee, Philadelphia, PA.

Joseph Minni, United States Trustee, Philadelphia, PA.

### OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Presently before the Court is the Debtor's Application for Waiver of the Chapter 7 Filing Fee (the "Application"). The United States Trustee ("UST") filed "comments" questioning whether the Application should be granted where an attorneys' fee of $400 had been paid, albeit by the Debtor's grandmother, for representation in the Chapter 7 case. After hearing on notice, I deny the Debtor's Application for the reasons set forth below.

### BACKGROUND

The Debtor, Stephanie V. Stephenson, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 12, 1996. Accompanying her petition was a completed form application required when fee waiver is sought, which was submitted to the clerk in lieu of paying the normal filing fee of $175. Although fee waiver is normally not available in bankruptcy, the Eastern District of Pennsylvania is one of six bankruptcy courts participating in a pilot project to study the effect of waiving the filing fee in Chapter 7 cases for individual debtors who are unable to pay the fee in installments.

In the Application the Debtor states that she has been unemployed since June 1995 and that she presently has no income from any source including government assistance, child support or even gift income. Rather Debtor depends solely on the assistance of family and friends for support. Debtor states that she has average monthly expenses of $1,171 consisting of rent, utility payments, food, clothing, transportation, recreation, insurance, taxes, and $300 of home maintenance costs, and supports her 15 year old son with whom she lives. The Debtor disclosed that her grandmother, Gladys Taylor, paid her attorney $400 for representation in this bankruptcy case.

A hearing attended by the Debtor, her counsel and a representative of the UST was held to consider Debtor's eligibility for the fee waiver program. The UST argued that Bankruptcy Rule 1006(b)(3) was a barrier to her eligibility. Rule 1006(b)(3) provides that in cases where the filing fee is being paid in installments an attorney representing the debtor cannot receive payment until the fee is paid in full. According to the UST, Debtor's election to utilize $400 to pay her attorney rather than the filing fee was fatal to her request for relief.

The Debtor, while present, did not testify in support of her Application. Rather her counsel answered questions posed by the Court and presented argument. The UST moved the admission of the Debtor's Application and Schedules.

 Counsel stated that he became involved in the case as a result of his solicitation of the Debtor, and that the Debtor's family, who paid his fee, wanted him to represent the Debtor.[1] Counsel further disclosed that a judgment creditor of the Debtor had levied on personal property belonging not only to the Debtor but also to members of her family, and that his intervention in the matter, by representing the Debtor in bank-

---

1. Counsel argued that funding cuts in legal services programs have forced increasing numbers of low income clients to seek representation from attorneys in private practice. However, upon inquiry from the Court, counsel acknowledged that he did not advise Debtor of the existence of the Consumer Bankruptcy Assistance Project, a pro bono organization of the local bankruptcy bar that provides free representation to low income people in Chapter 7 cases.

ruptcy, saved the property from being sold at sheriff's sale. With regard to the property of the Debtor's family, counsel indicated that it could be exposed to an execution sale by a judgment creditor of the Debtor because a "timely" property claim had not been filed with the Sheriff's Office on behalf of the non-debtor family members. These family members, counsel stated, decided that they would rather pay him $400 to file bankruptcy for the Debtor than have their own property exposed to a sheriff's sale.[2]

Counsel described the Debtor as having no income and being dependent upon the money and resources of her family with whom she apparently resides. Although the Debtor did not testify under oath, upon inquiry from the Court, she stated that she was not working, or receiving any form of government assistance, and was totally dependent on the largesse of her family for support. The Debtor owns no real property and only a bare minimum of personal property. Schedule "B" discloses a total of $500 worth of personal property consisting of $250 of "miscellaneous" clothing and another $250 of "miscellaneous" household goods and furnishings. Consistent with her Application, her Schedules show no income and $1,171 of average monthly living expenses. The Debtor lists a single claim in the amount of $1200, recorded as secured on Schedule "D", presumably held by the judgment creditor who counsel stated had levied on the Debtor's property.[3]

## DISCUSSION

Under the Bankruptcy Act, a debtor could not receive a discharge unless filing fees were paid. Bankruptcy Act of 1898, §§ 14(b)(2) & 14(c)(8), 11 U.S.C. §§ 32(b)(2) & (c)(8) (repealed). The constitutionality of that provision was upheld by the Supreme Court in *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The *Kras* Court, observing that obtaining a discharge of one's debts was not a constitutional right, upheld the statutory fee requirements as not violative of due process or equal protection rights and found that the general statute providing *in forma pauperis* relief in federal courts, 28 U.S.C. § 1915, was not applicable in bankruptcy. Contemporaneously with the enactment of the Bankruptcy Reform Act of 1978, the *Kras* decision was essentially codified in 28 U.S.C. § 1930(a) which excepts bankruptcy filing fees from the federal *in forma pauperis* statute, 28 U.S.C. § 1915.[4] However, § 1930 contemplates that the bankruptcy filing fee may be paid in installments. Bankruptcy Rule 1006 complements § 1930 by prescribing the procedure for paying the filing fee in installments and expressly provides:

(b)(3) Postponement of Attorney's Fees. The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.

■ In October 1993, Congress enacted legislation requiring the Judicial Conference of the United States to study and report on the impact of allowing debtors to file bankruptcy *in forma pauperis* ("IFP"). Depart-

---

2. It is, of course, fundamental that the statements of counsel are not evidence. Barry Russell, Bankruptcy Evidence Manual, 1995–96, § 101.1 at 174. Counsel's unequivocal statements may, nevertheless, be given the effect of judicial admissions. *Glick v. White Motor Company,* 458 F.2d 1287, 1291 (3d Cir.1972); *In re Sanglier,* 124 B.R. 511, 513 n. 3 (Bankr. E.D.Mich.1991); *In re Eagson Corp.,* 37 B.R. 471, 481 n. 35 (Bankr.E.D.Pa.1984); 2 McCormick on Evidence § 257, at 147 & n. 2 (John W. Strong ed., 4th ed. 1992). In this instance, counsel's description of the events leading up to the filing of the case made to the Court will be treated as judicial admissions.

3. Question 4(a) of the Statement of Financial Affairs, wherein debtors are suppose to disclose law suits to which they have been party, contains a cross reference to Schedule "D." Schedule "D", however, makes no reference to any law suit. The Debtor also fails to disclose, however, that any property was levied upon, which information is required to be supplied in either questions 4(b), 5 or 6(b) of the Statement of Financial Affairs.

4. That provision states, in pertinent part:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court . . ., the following fees:

. . . . .

An individual commencing a voluntary case or a joint case under title 11 may such fee in installments. . . .

ment of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1994, Pub.L. No. 103–121, § 111(d), 107 Stat. 1153, 1165 (1993) (codified in the Historical and Statutory Notes to 28 U.S.C. § 1930). This legislation authorized a pilot program in six judicial districts for a three year period beginning October 1, 1994. The Eastern District of Pennsylvania was selected to participate in the program. A subcommittee of the Judicial Conference charged with overseeing the IFP pilot program issued "Guidelines and Procedures to Implement and Carry Out the *In Forma Pauperis* Pilot Program and Study" (the "Guidelines").[5] Neither the legislation nor Guidelines set forth a standard to be utilized by the court in reviewing these applications. To fill this vacuum pilot district courts have drawn on the rather considerable jurisprudence under 28 U.S.C. § 1915. *See In re Merritt,* 186 B.R. 924, 929 (Bankr.S.D.Ill. 1995)[6]; *In re Koren,* 176 B.R. 740, 742–45 (Bankr.E.D.Pa.1995). I will do likewise but in so doing, I recognize that the allowance of IFP bankruptcy filings represents new grounds and presents special issues not presented in non-bankruptcy cases. Indeed one of the purposes of the pilot program is to develop and evaluate policies for the application of an IFP program in the unique context of bankruptcy.

IFP status is generally granted after an applicant establishes that he or she cannot afford to pay the filing fees or other costs of litigation and at the same time provide the necessities of life for himself and his dependents. *Adkins v. E.I. DuPont de Nemours, & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948).[7] The applicant bears the burden of proving his entitlement to IFP relief by a preponderance of the evidence. In making that determination, the court shall evaluate the totality of the circumstances. *In re Shannon,* 180 B.R. 189, 192 (Bankr.W.D.Tenn.1995); *In re Beecham,* 181 B.R. 335, 336 (Bankr.W.D.Tenn.1994); *In re Clark,* 173 B.R. 142, 146 (W.D.Tenn. 1994).

In this case, there is no question that Debtor's personal financial resources qualify her for IFP relief. Indeed the only objection raised by the UST is whether her payment of an attorney requires the Court to disapprove her application. I turn to that question first.

### *A.*

Courts are divided on the applicability to an IFP determination of Rule 1006(b)(3)'s requirement that the filing fee be paid in full before any payment is made to counsel. *Compare In re Beecham, supra; In re Takeshorse,* 177 B.R. 99 (Bankr. D.Mont.1994)[8]; *In re Thompson,* 177 B.R.

---

**5.** By Order of the Court on September 30, 1994, the Bankruptcy Court for the Eastern District of Pennsylvania adopted the Guidelines in implementing the program in this district.

**6.** In the view of the *Merritt* court, the Guidelines suggest that bankruptcy courts follow the general federal IFP statute and the cases thereunder when rendering IFP determinations. *Id. (citing* IFP Subcommittee Guidelines for Processing Fee Waiver Applications and the Underlying Chapter 7 Cases, 4 (1994)).

**7.** The framework for an IFP determination was established in *Adkins* as follows:

We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs * * * and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they

have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

*Id.* at 339–40, 69 S.Ct. at 89.

**8.** The *Takeshorse* Court finds support for its decision in the Advisory Committee note to Rule 1006(b):

The requirement of paragraph (3) that filing fees be paid in full before the debtor may pay an attorney for services in connection with the case codifies the rule declared in *In re Latham,*

890 (Bankr.W.D.Tex.1994) *with Koren, supra.* The former decisions appear to reach that conclusion by applying the Rule without consideration of the context in which it is being applied, the IFP pilot program. Rule 1006 was promulgated to implement § 1930 which prohibits fee waivers except when installments are authorized. The pilot program relieves debtors in pilot districts from that restriction and allows IFP relief in bankruptcy cases without regard to the extant statutory scheme. Rule 1006(b)(1) which prohibits filing without payment of the fee except where installments are authorized is thus suspended by the pilot program. It would be anomalous to, on the one hand, suspend the general filing fee requirement rule and yet maintain a condition imposed on a lesser restriction, installment payments. Nor does application of Rule 1006(b)(3) which governs the procedure in installment fee cases make sense when applied to fee waiver. With installments payments, the Rule has the effect of delaying the payment of counsel. In the fee waiver context, counsel fees would be altogether prohibited. *See Koren,* 176 B.R. at 746–47. A *per se* rule mandating disallowance of IFP status merely because a debtor paid money to an attorney seems contrary to the fundamental purpose of the IFP statute of providing equal access to the courts for indigent litigants. In this regard, the Supreme Court stated in *Adkins:*

> The statute here under consideration is not susceptible of a construction that would impose more burdens on lawyers employed by litigants unable to pay fees except on a contingent basis, than the burdens imposed on lawyers for those litigants who are able to employ counsel by the year or by payment of straight noncontingent fees. Section 3 of the statute specifically states that litigants who make affidavits of poverty shall be entitled to the same court processes, have the same right to the attendance of witnesses, and the same remedies as are provided by law in other cases. And as pointed out, § 4 of the statute

makes it abundantly clear that poor litigants shall have the same opportunity to be represented by counsel as litigants in more fortunate financial circumstances. The statutory construction urged by respondent here would result in restricting the opportunities of the poor litigant in getting a lawyer who would follow his case through the appellate courts. For as was said by the District Court in *Clark v. United States,* D.C., 57 F.2d 214, 216: " * * * The same poverty that compels a litigant to avail himself of this beneficent statute makes it impossible for him to hire counsel. He can procure counsel only by agreeing that out of the proceeds of his case, if there are proceeds, counsel shall be compensated. * * * In practical effect he (a poor litigant) is denied counsel if his counsel must either himself guarantee the costs or file an affidavit that he also is penniless. The statute was intended for the benefit of those too poor to pay or give security for costs, and it was not intended that they should be compelled to employ only paupers to represent them."

335 U.S. at 343–44, 69 S.Ct. at 91. In view of this statement it is evident that a blanket rule denying IFP status to litigants with paid private counsel is inconsistent with general principles developed in the federal courts for deciding *in forma pauperis* applications. *See Fullan v. Commissioner of Corrections,* 891 F.2d 1007 (2d Cir.1989), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3229, 110 L.Ed.2d 675 (1990). Indeed these are the principles that are being tested in the bankruptcy arena by the pilot IFP program. Accordingly, I respectfully disagree with the UST and find the payment of the attorney fee not to be an automatic bar to IFP relief. Rather it is one of many factors that the court must consider in determining a debtor's eligibility for a fee waiver.

Weighing this factor in the instant case, along with the other circumstances discussed below, militates against granting the Debtor's Application. Based on the statements of

271 F. 538 (N.D. N.Y.1921), and *In re Darr,* 232 F. 415 (N.D.Cal.1916).

These cases, apparently decided at a time when IFP filings were permitted in bankruptcy, predate and appear undermined by the Supreme

Court's pronouncement in *Adkins.* In any event, the restriction on fee waiver suggests that the prohibition on payment of attorneys fees rule was not considered except in the context of installment payments.

counsel regarding the circumstances surrounding the filing of this case, I conclude that the payment of an attorney was not intended to protect Debtor's access to the court. Rather Debtor's bankruptcy relief is incidental to the primary goal of this filing, *i.e.*, counsel's intention (albeit misguided) to protect assets of the Debtor's family.

## B.

The Debtor also fails to qualify for IFP relief because she has not established by a preponderance of the evidence that she lacks access to resources sufficient to pay the filing fee and at the same time provide the necessities for herself and her family. The resources available to a debtor from family members is a consideration in determining whether to grant a petition to proceed IFP. In *Monti v. McKeon*, 600 F.Supp. 112 (D.Conn.1984), *aff'd*, 788 F.2d 1 (2d Cir.1985), for instance, the court denied a plaintiff in a civil action the right to appeal an adverse jury verdict IFP. During the preceding trial the plaintiff testified that she was supported by her husband, but the IFP petition filed with her notice of appeal disclosed only her own income. The court observed that it had the power to look beyond the affidavit and request more specific information if it was necessary to evaluate her financial condition. The court noted that based on established authority it had the right to look to the income of interested persons, such as spouses and parents, in evaluating the funds available to the petitioner. The Court stated:

> The purpose of 28 U.S.C. § 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances. [citation omitted]. If the plaintiff is supported by her spouse, and her spouse is financially able to pay the costs of this appeal, it

follows that the plaintiff's own lack of funds will not prevent her from gaining access to the courts. Where funds to pursue an appeal are readily available to a plaintiff, she should not be permitted to maintain an appeal at the taxpayers' expense.

*Id.* at 114. Thus, because the plaintiff did not include the income of her husband in the petition, the court held that it lacked sufficient information to allow her to proceed IFP. In another case, *Williams v. Spencer*, 455 F.Supp. 205 (D.Md.1978), the court denied IFP status to two minors, plaintiffs in a civil action, who insisted that the incomes of their parents be excluded from consideration. The court found the minors' position untenable in light of the fact that their parents provided them with support and thus already supplied the necessities of life. The court stated, "[t]he question under 28 U.S.C. § 1915 is whether the litigant is "unable to pay" the costs, and the answer has consistently depended in part on [the] litigant's *actual* ability to get funds from a spouse, a parent, an adult sibling, or other next friend." *Id.* at 209 (emphasis added).[9]

The subsequent decision of the Second Circuit Court of Appeals in *Fullan v. Commissioner of Corrections*, 891 F.2d 1007 (2nd Cir.1989) *cert. denied*, 496 U.S. 942, 110 S.Ct. 3229, 110 L.Ed.2d 675 (1990), in which the court held that the income of third parties should not have been taken into account in the determination of the applicant's IFP petition does not, in my view, compel a contrary conclusion in this case. The applicant in *Fullan* was a criminal defendant who was appealing a murder conviction. Family and friends raised $10,000 which they used to hire an attorney to represent Fullan in the appeal. Fullan nevertheless sought to proceed IFP so that he could be excused from the filing fee and not have to pay for repro-

9. While the issue of whether the support of others must be considered in an IFP determination was not before the Court, the courts in many cases have taken a spouse's support into consideration. *See Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984) (husband's IFP status revoked where it was discovered that he under reported wife's income on original application); *United States v. Stone*, 298 F.2d 441 (4th Cir.1962), *cert. denied*, 370 U.S. 927, 82 S.Ct. 1568, 8 L.Ed.2d 506 (1962) (husband and wife's income considered together); *Jones v. State*, 893 F.Supp. 643, 646 (E.D.Tex. 1995) (same); *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 686 F.Supp. 385 (N.D.N.Y.1988), *aff'd*, 865 F.2d 22 (2nd Cir.1988) (same); *Sejeck v. Singer Mfg. Co.*, 113 F.Supp. 281 (D.N.J.1953) (same).

duction of the transcript, which request was denied by the State of New York. Based on the fact that Fullan did not have control over the money raised by his family and friends, the Second Circuit disagreed with the State of New York and ordered that he be treated as indigent. In so ruling the court emphasized that "indigence is personal", *id.* at 1011, and that the "[s]tate is not entitled to treat the funds of others, over which a defendant has no control, as assets of the defendant." *Id.* The court stated, however, that it would reach a different result if Fullan actually had discretionary control over the money raised by family and friends, but baring a showing that he had such control, he must be treated as indigent.

This case is clearly distinguishable from *Fullan.* In the present case, all of the Debtor's needs are being provided for by her family. While the Debtor stated that her family's resources are limited and that sometimes they are unable to pay all her bills, there is no indication that they would not have advanced the filing fee if requested, as they do with her other expenses including discretionary items such as home maintenance and recreation.[10] This is particularly so because the grandmother is financing the Debtor's bankruptcy counsel in order to protect her own property, rather than solely to assist the Debtor. According to Debtor's counsel, the grandmother would rather pay him a fee to represent the Debtor in a bankruptcy proceeding than have property belonging to herself and other family members subject to sheriff's sale (with the concomitant disruption to the household) on account of the Debtor's obligation to a judgment creditor. Indeed this bankruptcy came to be filed when counsel solicited Debtor personally from a "pool of similarly situated" persons, presumably in response to the threatened sheriff's sale. Since the Debtor lives with family members who support her and have

paid for her to have counsel for the purpose of protecting their own interests, their financial resources are relevant to the Debtor's eligibility for IFP status. On the record before us, no such information was presented, and, therefore, the Debtor's petition must be denied.

### C.

■■■■ Finally, the Debtor's Application should be denied because her bankruptcy filing is "frivolous" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). That statutory provision of the federal *in forma pauperis* statute protects against abuses of the privilege of fee waiver by allowing a district court to dismiss the case if, *inter alia,* the action is "frivolous or malicious."[11] In *Neitzke v. Williams, supra,* the Supreme Court stated:

> The federal *in forma pauperis* statute, enacted in 1892, and presently codified as 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts. [citation omitted] Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, *inter alia,* that he is unable to pay the costs of the lawsuit. Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.

Dismissal of a law suit as frivolous under section 1915(e)(2)(B)(i) is not a dismissal on the merits so as to prejudice a claimant's ability to refile an action with a filing fee. *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

In *Deutsch v. United States,* 67 F.3d 1080 (3rd Cir.1995), the Third Circuit recognized that the Supreme Court had only begun to define the frivolous standard of § 1915 and

---

**10.** There is no indication that Debtor requested her family to advance money for the filing fee, presumably having been advised by counsel that fee waivers are available under the IFP program. The Debtor who stated that she was unaware that filing fees could be paid in installments, nonetheless indicated that she did not think her family could afford that expense. Since the fam-

ily's resources were not disclosed in the Application, the Court cannot evaluate that conclusion.

**11.** The United States Supreme Court in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), acknowledged the generality of the term "frivolous" and the challenge it presents to the judiciary interpreting its contours.

therefore it was not preempted from considering whether trivial claims were also encompassed within that term. The Court concluded that "under § 1915(d), a court may also properly focus on whether the action is frivolous in the sense that it is: (1) of little or no weight, value, or importance; (2) not worthy of serious attention; or (3) trivial." *Id.* at 1087. This plain meaning interpretation of frivolous was found to be consistent with the goals of § 1915(d) to limit claims that would not have been filed had there been a filing fee requirement. The Court indicated that the touchstone of a frivolous claim is whether a reasonable, paying litigant would bring the same action after considering the costs of suit, or, if not, whether there is some other important non-monetary interest at stake in the litigation. The determination of whether a paying litigant would bring the same case should be based on a comparison of the amount in controversy versus the cost of suit.[12]

At least one bankruptcy court has applied § 1915(d)'s constraint on filing IFP to a fee waiver determination made in the bankruptcy pilot program. In *Merritt, supra,* the court, considering a debtor's[13] request for waiver of filing fee and costs of transcript in order to file an appeal of an adverse dischargeability judgment,[14] concluded that legal merit must be demonstrated in order to secure IFP relief. Moreover, it recognized that the standard to determine legal merit is more rigorous when economic rather than liberty interests are at stake. *Citing* the *Kras* decision, it observed:

> Unlike the right to appeal a criminal conviction or seek redress for a violation of civil rights, obtaining a discharge is a matter of legislative grace, not a constitutional right.... As a result, an individual seeking the benefit of bankruptcy legislation has no constitutional right of access to the courts. *See Kras,* 409 U.S. at 446, 93 S.Ct. at 638. Rather in this "area of economics and social welfare," *id.,* a stricter standard for reviewing *in forma pauperis* applications is justified to fulfill the statutory purpose of providing equal access to the courts for paying and non-paying litigants.

186 B.R. at 932. With this guidance, the court denied the motion for IFP relief finding the $47.25 at issue *de minimus* when compared to the $105 filing fee and transcript charges and given the minimal benefit to be obtained from an appeal of the insubstantial questions presented.

The *Merritt* court noted in passing its view that legal merit is not an issue in determining a fee waiver request for the filing the bankruptcy petition itself since the legal eligibility requirements for filing a case are set by statute. *Id.* at 931 and n. 12. While I believe that to be generally true, there are certainly exceptions to that rule. I find that this case presents one. Here the primary objective of the Debtor's bankruptcy is to protect property belonging to her family members from being sold at a sheriff sale pursuant to a levy by the Debtor's judgment creditor. If personal property belonging to family members has been erroneously levied by the creditor of the Debtor, a property claim may be filed with the Sheriff's office under the sheriff's interpleader process outlined in the Pennsylvania Rules of Civil Procedure. Pa.R.C.P. 3201–16; *see also* 13 Standard Pennsylvania Practice 2d §§ 73:1–73:55 (1996). According to this process, at any time prior to a sheriff's sale, a third party with an interest in property subject to levy may file a claim with the sheriff for the

---

12. *Applying this analysis, the Court affirmed a district court's decision to dismiss an IFP case seeking damages in the amount of $4.20 against prison officials who allegedly absconded with several of the plaintiff's writing pens. Because the amount in controversy was* de minimus, *the Court had no difficulty concluding the plaintiff's law suit would not have been brought by a paying litigant.*

13. The debtor had previously sought and obtained a fee waiver to commence his Chapter 7 case.

14. The issues on appeal were (1) the non-dischargeability of a $47.25 under § 523(a)(7); (2) the court's refusal to sanction prison officials for freezing his commissary account; (3) the failure to allow him free hands to access his materials during trial; (4) the failure to afford him counsel to defend him; (5) the failure to protect him from assault by prison officials.

purpose of freeing the property from the creditor's judicial lien.[15] Pa.R.C.P. 3202–04. And the filing of a property claim has the added benefit of postponing any scheduled sale of the claimed property. Pa.R.C.P. 3203. The claim may be filed, moreover, for the modest fee of only $20 according to the fee schedule for the Sheriff's Office in Philadelphia.

Moreover, bankruptcy is an ineffective remedy for the problem presented. The Debtor's bankruptcy filing will have absolutely no effect upon the validity of the creditor's lien on property belonging to non-debtor, third parties.[16] The creditor's lien on the property will continue after the bankruptcy and last either until it expires, is terminated based on a property claim, or the property is sold. Consequently, there is no conceivable legal merit to filing the instant bankruptcy for the purpose of protecting property belonging to the Debtor's family members. Therefore, to the extent the bankruptcy was filed for this purpose the case is frivolous within the meaning of § 1915(d).

This conclusion is not altered by the fact that the Debtor would also be securing a discharge of her debts. If, as explained by counsel, the purpose of the bankruptcy is also to protect the Debtor's own property from execution, this limited purpose could be achieved under state law merely by filing an exemption claim with the Sheriff's Office for the small fee of $10. Although in many instances, the rather meager exemptions provided under Pennsylvania law are not useful to people seeking to protect personal property from execution, in this case, where the Debtor has so little property, Pennsylvania's exemption laws provide her complete relief. Under Pennsylvania law, the Debtor is permitted to exempt up to $300 in any type of property, 42 Pa.C.S. § 8123(a), along with her entire interest in wearing apparel. *Id.* § 8124(a)(1). Thus, without filing bankruptcy, these exemptions offer the Debtor the ability to protect all of her household goods and furnishings, which she valued at $250, and all of her clothing.

In light of the other courses of action available to the Debtor, I conclude that a reasonable person in her same position, upon being fully informed of her options, would not file bankruptcy if she had to pay the filing fee of $175. The fact of the matter is that the Debtor could achieve her goal of defeating the sheriff sale for the relatively small sum of $30, the total price to file a property claim and a claim of exemptions.

I recognize that this analysis differs from *Deutsch* in that the determination of frivolousness is based on a comparison of the cost of alternative remedies rather than a comparison of the cost of suit versus the amount in controversy.[17] Nevertheless, *Deutsch* recognized that the test it devised was not be applied in a rigid fashion and does not preempt a bankruptcy court from fashioning tests more appropriate to the bankruptcy context. And most significantly, in the context of the present case, a comparison of

---

15. We note that the Rule contradicts counsel's statement in court that it was necessary to file bankruptcy because a "timely" property claim was not filed. Under the Rule, a property claim may be filed anytime prior to a sheriff's sale.

16. Section 522 of the Bankruptcy Code permits the Debtor to exempt her interest in certain types and amounts of property, 11 U.S.C. § 522(b), and then to avoid judicial liens impairing the Debtor's ability benefit from the exemptions. *Id.* 522(f)(1). These powers, however, are limited solely to interests in property belonging to the Debtor. The Code does not permit the Debtor to avoid liens against the property of third parties, even when such liens may be invalid under state law.

17. In the present case, the amount in controversy in the case is the $1,200 debt the Debtor owes to her one judgment creditor and seeks to have discharged. The cost of suit is, of course, the $175 filing fee. Whether a reasonable person would conclude that it is worthwhile to pay $175 in order to discharge a single debt in the amount of $1,200 is questionable. In any event, I find that under the circumstances, this Debtor would not have. Based on the colloquy with the Debtor and her counsel at the hearing, during which it was clear that all options had not been explained to her and the attorney acknowledged his solicitation of her case, it appears that her bankruptcy filing was an accommodation to her family prompted by the advice of counsel who secured a fee in the process. The facts of this case are unique and thus this decision should be read accordingly. I leave for another day whether, and if so when, an insignificant amount of indebtedness would justify a finding of frivolousness.

alternative remedies satisfies the test's purpose of determining whether a reasonable paying litigant in the place of the Debtor would choose to file bankruptcy. In addition to considering the ultimate amount in controversy, the reasonable person filing bankruptcy, in order to make an intelligent, informed decision, would also have to consider the cost of any available alternative remedies, as I have done.

## CONCLUSION

We find that the Debtor is not eligible to proceed IFP in her bankruptcy case. While payment of an attorney is not an automatic barrier to IFP relief, the circumstances of the payment here in light of the advice counsel gave to the Debtor and the purpose to which this bankruptcy filing is being put militate against approval of the Application. The Debtor has failed to meet her burden to show that she cannot afford the filing fee absent evidence of the income of family members who totally support her and seek a direct benefit from the Debtor's case. Secondarily, even if the Debtor qualified economically for IFP relief, her Application should be denied as her case is "frivolous". We will thus enter an order requiring the Debtor to pay the filing fee or suffer dismissal.

An Order consistent with this Opinion will be issued.

### *ORDER*

**AND NOW,** this 10th day of February, 1997, after consideration of the Debtor's Application to Proceed *In Forma Pauperis,* the United States Trustee's response thereto, and after notice and hearing;

It is hereby **ORDERED** that:

1. The Debtor's Application is **DENIED.**

2. The Debtor is **ORDERED** to pay the filing fee for her bankruptcy case, or submit an application to pay the filing fee in installments.

3. If the requirements of paragraph 2 of this order are not satisfied *within 15 days*

after entry, the instant case shall be *dismissed without further notice or hearing.*